Bernard J. Everett
EVERETT COOK LAW
217 E. Park Street
Anaconda, MT 59711
Phone: (406) 299-2770
beneverett@everettlawpllc.com

Christopher D. Bryan*
Andrea S. Bryan*
GARFIELD & HECHT, P.C.
625 E. Hyman Avenue, Suite 201
Aspen, Colorado 81611
Phone: 970.925.1936
Facsimile: 970.925.3008
cbryan@garfieldhecht.com
abryan@garfieldhecht.com
*Application for Admission *Pro Hac Vice* Pending

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **OLIVER WHITCOMB** and **AMY CLIFFORD**, on behalf of **M.W.** (Minor),<br><br>          Plaintiffs,<br><br>      v.<br><br>**INNERCHANGE CHRYSALIS, LLC, d/b/a CHRYSALIS THERAPEUTIC BOARDING SCHOOL; CHANGE ACADEMY AT LAKE OF THE OZARKS, LLC and SOLACIUM HOLDINGS, LLC, d/b/a EMBARK BEHAVIORAL HEALTH; INNERCHANGE VIVE, LLC; COREY HICKMAN, an** | Cause No: _____<br><br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

| individual; and **AMBERLI WYATT**, an individual. | |
|---|---|
| Defendants. | |

 

This civil action arises out of Defendants' and their employees' abuse of a vulnerable female minor who was a student at the therapeutic boarding school owned and operated by Defendants.

Plaintiffs Oliver Whitcomb ("Oliver") and Amy Clifford ("Amy"), on behalf of their minor daughter, M.W., hereby demand monetary damages from Defendants, individually, jointly, and severally, including, but not limited to, general damages, special damages, non-economic damages, punitive damages, treble damages in accordance with the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-103), costs, expenses, and attorneys' fees. Plaintiffs further seek an order directing Defendants to immediately comply with Mont. Code Ann. § 41-3-201 by reporting all known or suspected instances of child abuse occurring at Defendants' facilities to the Montana Department of Public Health and Human Services ("DPHHS"). Finally, Plaintiffs respectfully plead this Court to pierce the corporate veil.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiffs Oliver Whitcomb and Amy Clifford ("Parents") are the parents and guardians of M.W., a minor (Parents and M.W. are collectively referred to herein as the "Plaintiffs" or "Family").

2.    Parents are residents of the State of Idaho.

3.    M.W. is a fifteen-year-old girl who presently resides in the State of Idaho.

4.    Defendant InnerChange Chrysalis, LLC ("InnerChange Chrysalis") is a Delaware limited liability company registered to conduct business in the State of Montana and with its principal place of business in the State of Montana.

5.    InnerChange Chrysalis operates an all-girls private boarding school in Eureka, Montana, named Chrysalis, also known as Chrysalis Therapeutic Boarding School for Girls ("Chrysalis School").

6.    Defendant Change Academy at Lake of the Ozarks, LLC ("CALO") is a Delaware limited liability company with its principal place of business in the State of Missouri.

7.    Defendant Solacium Holdings, LLC ("Solacium") is a Delaware limited liability company with its principal place of business in the State of Arizona.

8.     Upon information and belief, Defendants CALO and Solacium operate under the tradename Embark Behavioral Health ("Embark").

9.     Defendant Embark provides information and advertisements about Chrysalis School on its website, www.embarkbh.com.

10.     Upon information and belief, Embark owns and operates therapy programs, including and like Chrysalis School, at numerous locations throughout the United States, excluding Idaho. Embark's website identifies Chrysalis School as a facility controlled and/or operated by Embark.

11.     Defendant InnerChange Vive, LLC ("Vive") is a Delaware limited liability company with its principal place of business in the State of Utah.

12.     Vive provides information and advertisements about Chrysalis School on its website, www.innerchange.com.

13.     Defendant AmberLi Wyatt ("Wyatt") was at all material times relevant herein, an employee and agent of Chrysalis School. Upon information and belief, AmberLi Wyatt is, and was at all material times, a resident of the State of Montana.

14.     Defendant Corey Hickman ("Hickman") is, and was at all material times relevant herein, the Executive Director of Chrysalis School. Upon information and belief, Defendant Hickman is, and was at all material times relevant herein, a resident of the State of Montana.

15.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Plaintiffs are residents of Idaho, and Defendants are residents of Montana, Utah, Arizona, Delaware, and Missouri, and the amount in controversy exceeds $75,000.

16.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as the Defendants have offices, conduct business, or can be found in the district, and the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district. Venue is further proper under 29 U.S.C. § 1132(e)(2) because Defendants have substantial business contacts within the State of Montana and in this district and are subject to Montana's long-arm statute, Mont. R. Civ. P. 4(b)(1), because Defendants regularly transact business in the State of Montana.

## GENERAL ALLEGATIONS

17.    Chrysalis School is a private alternative adolescent residential or outdoor program that is licensed to operate in the State of Montana by the Montana Department of Health and Human Services ("DPHHS").

18.    Chrysalis School holds itself out as a "Therapeutic Boarding School for Girls."

19.    Chrysalis School is managed by Hickman and owned and operated by InnerChange Chrysalis, and directly affiliated with and sponsored publicly by Vive, CALO, Solacium, and Embark. InnerChange Chrysalis, Hickman, Wyatt,

Vive, CALO, Solacium, and Embark are collectively known as "Defendants." Chrysalis School enrolls students aged from thirteen to eighteen years old.

20.    Chrysalis School has held itself out as a "47-acre haven for students ages thirteen to eighteen struggling with a variety of emotional, relational, and academic challenges."

21.    Chrysalis School has proclaimed that its mission is to provide at-risk young girls "struggling with a variety of emotional, relational, and academic challenges," with "a nurturing and supportive environment" that "fosters identity development, self-confidence and a sense of belonging."

22.    Defendants have stated on the Chrysalis School website (chrysalisschoolmontana.com) that its therapists "bring an expertise that allows students to develop healthy relationships and positive, sustaining habits." Further, according to the Chrysalis School website, "[t]he Chrysalis clinical approach is to build connection, heal wounds, and find strength."

23.    Enrollees of Chrysalis School leave their families and relocate for full-time residency and supervision, where they are under near-constant observation by program staff. The adolescents eat, bathe, recreate, sleep, receive counseling, and are educated at Chrysalis School.

24.    Chrysalis School enrollees live on-site at Chrysalis School in one of three residential facilities, or houses: Lake House, Horse House, and The Cottage.

25.    Chrysalis School proclaims that its staff consists of "highly qualified and caring academic and clinical experts" qualified to treat a variety of mental health and emotional conditions.

26.    A crucial aspect of Chrysalis School's curriculum includes "adventure therapy," which involves taking students on various outdoor excursions including skiing, hiking, rafting, rock climbing, and boating.

27.    Hickman has been the Executive Director for Chrysalis School since January 2015.

28.    Hickman is identified as an Embark "team member" on Embark's website.

29.    According to Vive's website, Hickman is identified as a Vive "team member" on Vive's website.

30.    Hickman represents himself to be a "certified therapeutic recreation specialist."

31.    At all relevant times herein, Hickman operated Chrysalis School and managed its employees.

### M.W. Enrolls in Chrysalis School

32.    Parents decided to enroll M.W. in Chrysalis School after M.W. attended and successfully completed the Wingate Wilderness Program ("Wingate") in Utah from November 4, 2021 through January 17, 2022. During her time at

Wingate, in early January 2021, M.W.'s family began working with an educational and therapeutic consultant, Thrive Treatment Consulting ("Thrive"), to determine the appropriate next steps for M.W.'s education, growth, and treatment.

33.    In collaboration with Thrive, Parents chose Chrysalis School for M.W.

34.    Upon information and belief, Thrive coordinated M.W.'s attendance at Chrysalis School with Chrysalis School representatives prior to, during, and after M.W.'s enrollment.

35.    Prior to M.W.'s enrollment at Chrysalis School, Parents spoke to representatives of InnerChange Chrysalis and Embark, including Michael Carpenter, and the then-human resources director, Heather Hatch. Parents spoke to these representatives to gain insight about Chrysalis School's environment.  None of the Chrysalis School representatives ever mentioned that Chrysalis School would present an unsafe environment for M.W.

36.    Plaintiffs, relying on representations made by Defendants about the benefits Chrysalis School could offer M.W., entrusted Defendants with her physical and emotional well-being.

37.    Thrive, through Diane Urbano and Sarah McGuiness, communicated with Chrysalis School employees, including Krysten Fitzsimmons, Heather Hatch, and Ruth Richard Schlarman, prior and during M.W.'s attendance at Chrysalis

School.  These Chrysalis School employees never mentioned that there have been complaints about inappropriate behavior and abuse at Chrysalis School.

38.    M.W was admitted to Chrysalis School in January 2022 and began attending Chrysalis School that month.

39.    Parents, together with M.W.'s grandparent, paid tuition via automatic bank withdrawals to Embark. Monthly tuition was approximately $12,000 a month.

40.    M.W. was fourteen years old at the time she was enrolled at Chrysalis School.

### M.W.'s Nightmare Experience at Chrysalis School

41.    Unbeknownst to Parents, but known to Defendants as early as the Fall of 2021, a Chrysalis School employee, Tyler Wedemeyer (hereinafter "Wedemeyer"), had been abusing minor, female students at Chrysalis School.

42.    At all relevant times herein, Wedemeyer was an agent, servant, and employee of Defendants.

43.    At all relevant times herein, Wedemeyer was acting within the scope of his employment with Defendants.

44.    The abuse occurring at Chrysalis School when Parents made the decision to enroll M.W. persisted when M.W. began her time there in January 2022.

45.    While at Chrysalis School, M.W. was abused numerous times.

46.     The abuse perpetrated against M.W. continued until the Parents learned of it and withdrew M.W. from Chrysalis School in the Spring of 2022 upon the strong recommendation of M.W.'s therapist.

47.     Wedemeyer was one of the first staff members M.W. met when she arrived at Chrysalis School in early 2022.

48.     Upon information and belief, Wedemeyer began his employment with Chrysalis School in late Summer (July or August) of 2021.

49.     Upon information and belief, at all relevant times herein, Wedemeyer was an "adventure staff" member of Chrysalis School but worked in every department and in various roles at Chrysalis School, including Residential Staff, transport, and as a substitute teacher.

50.     Before January 2022, Wedemeyer, a male in his early thirties, had been assigned as residential staff to oversee Horse House and its female residents. By the time M.W. arrived at Chrysalis School in January 2022, Wedemeyer had been reassigned to Lake House, which was the same house M.W. began living in when she arrived at Chrysalis School.

51.     Wedemeyer was also assigned to conduct M.W.'s daily "Executive Function" check-ins, also known as "DMS" check-ins.

52.     Wedemeyer immediately gained M.W.'s trust and began grooming M.W. for sexually predatory behavior, including persuading M.W. to divulge personal, sensitive information of a sexual nature.

53.     M.W. was around Wedemeyer almost every weekend on school "adventures."

54.     Upon information and belief, Chrysalis School allowed Wedemeyer to be with female students at the school unsupervised, including going on walks alone with female students.

55.     In early February 2022, M.W. broke her collar bone. As a result, M.W. was then labeled a "Person Unable to Participate" in the outdoor adventures, or, suggestively, what Chrysalis School called a "PUP."

56.     On one occasion, Wedemeyer convinced M.W. and other PUPs to go on a drive with him, and asked M.W. to come sit in the passenger seat up front with him. Wedemeyer allowed M.W. to use his cell phone to access music on Spotify. While M.W. did so, Wedemeyer began touching M.W. on the inner thigh.

57.     On another occasion, Wedemeyer touched M.W.'s collar bone allegedly to "see how it was doing."

58.     At dinner time, Wedemeyer would sit next to M.W. and inappropriately touch her legs and thighs.

59.    Wedemeyer's abuse and exploitation of M.W. then continued to escalate. On several occasions, Wedemeyer intentionally, and without consent, observed M.W. naked while changing by her dresser or in the bathroom and would open the bathroom door when she was changing without knocking or announcing his presence.

60.    On another occasion, Wedemeyer intentionally observed M.W. topless, without her consent, while she was changing after swimming in a lake. After M.W. had wrapped herself in a towel, Wedemeyer approached M.W., and whispered to her: "You better have something underneath that towel…I know you don't."

61.    Wedemeyer would come into M.W.'s room and watch her. Wedemeyer would at times inappropriately touch M.W.'s body, including while she was in bed.

62.    During one "DMS" or "Executive Function" check-in, Wedemeyer hugged M.W. and then groped her buttocks without her consent.

63.    In addition to the abuse perpetrated by Wedemeyer, M.W. was subjected to other abusive, harassing, and oppressive conduct at Chrysalis School, including bullying because of her cisgendered sexual identity and her heterosexual orientation, also called "straight shaming."

64.     Chrysalis School tolerated open sexual conduct, including intercourse, between students on campus in public, even allowing two students to have sexual intercourse openly on a bus.

65.     Chrysalis School also tolerated theft of students' belongings on campus, including their underwear and other clothing.

66.     During M.W.'s time at Chrysalis School, there were several instances where M.W. would have to sleep on the sofa due to inappropriate roommate conduct, and lack of enforcement of cleanliness standards in shared sleeping areas.

67.     On February 20, 2022, Parents had a Zoom meeting with Chrysalis School staff to voice concerns about the school's allowing open sexual conduct on campus, tolerating theft, and the lack of students' access to exercise and healthy food. In addition to Parents, attendees of the meeting included Thrive education consultants, M.W.'s therapist, and Krysten Fitzsimmons, academic director of Chrysalis School.

68.     Upon information and belief, InnerChange Chrysalis did not change any policies, provide any further training to its employees, or otherwise address Parents' concerns. Rather, InnerChange Chrysalis, through its agents, merely assured parents that such conduct was not occurring.

### *The Culture of Abuse at Chrysalis School*

69.    M.W. was not the first or only student at Chrysalis School who was abused.

70.    Upon information and belief, Wedemeyer verbally, physically, sexually, psychologically, and/or emotionally abused and harassed at least five other female students between September 2021 and April 20, 2022.

71.    Upon information and belief, Wedemeyer entered the female students' rooms and masturbated over their beds while he thought they were sleeping, regularly walked in on girls while they were changing and while in the bathroom, and touched their intimate parts including their breasts or buttocks. Wedemeyer also attempted to begin an inappropriate romantic relationship with one student, "Jane"[1] in or around the Fall of 2021.

72.    Another minor female student was sexually assaulted in the bathroom after showering, whereupon Wedemeyer reportedly touched her breast without consent.

73.    Upon information and belief, Wedemeyer's conduct was reported to InnerChange Chrysalis and its agents and employees by one or more of these other students before M.W.'s arrival at the school.

---

[1] In the interest of privacy, this student's real name is not being used; "Jane" is a pseudonym.

74.    In the Fall of 2021, at least one student, "Jessica"[2] reported her concerns about Wedemeyer's inappropriate sexual "grooming" behavior to Chrysalis School staff and her concerns Wedemeyer posed a risk to the female students at the school.  Jessica's report was sent to Horse House manager AmberLi Wyatt (hereinafter "Wyatt") who, rather than reporting the suspected abuse, told Jessica that Jessica "didn't understand how serious the allegations were and that the allegations could ruin Wedemeyer's career."

75.    Upon information and belief, Wyatt told Jessica to report the abuse to Wedemeyer's cousin to get "more clarity." Upon information and belief, Wedemeyer's cousin was working as an art teacher at Chrysalis School at the time and was later fired for having a same sex-relationship with a student.

76.    Upon information and belief, Wyatt defended Wedemeyer's conduct on the basis that he is a "good Mormon."

77.    Upon information and belief, Chrysalis School conducted no investigation into Wedemeyer's conduct based on Jessica's report.

78.    Upon information and belief, Wyatt never reported the abuse allegations to the proper authorities.

79.    Pursuant to M.C.A. § 41-3-201(1),(2)(d), Chrysalis School and InnerChange Chrysalis and their employees and agents, including Wyatt and

---

[2] This, too, is a pseudonym for a person whose identity, for privacy purposes, will not be revealed in this document.

Hickman, are mandatory reporters and are required to report known or suspected child abuse to DPHHS.

80.    Upon information and belief, InnerChange Chrysalis and Chrysalis School and their employees including Wyatt and Hickman never informed DPHHS that they had knowledge or reason to believe that sexual abuse of a minor or minors was occurring at Chrysalis School.

81.    On or about February 14, 2022, an employee of InnerChange Chrysalis, Darya Cooper ("Cooper"), who has since left Chrysalis School due to what she described as a "toxic" environment and culture of silence and abuse at Chrysalis School, reported concerns about witnessing Wedemeyer's inappropriate physical contact with another student.

82.    During her employment at Chrysalis School, it became painfully apparent to Cooper that InnerChange Chrysalis and its employees lacked proper training or protocol to run and operate Chrysalis School or to provide a safe environment for its students.

83.    According to Cooper, the environment at Chrysalis School is more akin to a juvenile detention facility than a therapeutic "haven."

84.    On at least three occasions, Cooper expressed her concerns to Hickman and/or other Chrysalis School staff, including Nicholas Vejvoda, about abuse, neglect, and improper care of the Chrysalis School students, and lack of

proper training of Chrysalis School staff. *See* **Exhibits A & B**. Upon information and belief, Hickman and InnerChange Chrysalis ignored these allegations.

85.    Upon information and belief, InnerChange Chrysalis did not conduct any investigations related to Wedemeyer's inappropriate conduct, the allegations of sexual abuse, or other abusive behavior occurring at Chrysalis School.

86.    InnerChange Chrysalis did not terminate the employment of Wedemeyer at Chrysalis School in late 2021 after learning of his abusive conduct, including his attempts to initiate a sexual relationship with one or more students.

87.    To the knowledge of the Plaintiffs, InnerChange Chrysalis has never reported allegations of abuse by Wedemeyer to DPHHS as required by Montana law.

88.    In January 2022, in response to learning of Wedemeyer's attempted relationship with Jane, who was living in Horse House, agents of InnerChange Chrysalis merely decided to transfer Wedemeyer to oversee Lake House.

89.    In transferring Wedemeyer from Horse House to oversee Lake House in January 2022, InnerChange Chrysalis provided Wedemeyer with an opportunity to abuse and exploit a new cohort of minor females, including M.W.

90.    InnerChange Chrysalis did not inform local law enforcement that it had knowledge or had reason to believe that sexual or other abuse of a minor or minors was occurring at Chrysalis School.

91.    In a phone call with Plaintiffs' Therapeutic Consultant, Sarah McGuiness, in April 2022, Hickman admitted that InnerChange Chrysalis staff were aware of allegations of sexual abuse against Wedemeyer as early as the Fall of 2021. *See* **Exhibit C**. During this same phone call, Hickman confirmed that InnerChange Chrysalis did not report the suspected abuse as required by Montana law. *Id.*

92.    In its pre-enrollment correspondence with Parents, Chrysalis did not disclose that it had knowledge or had reason to believe that their daughter would face a foreseeable risk of being abused while at Chrysalis School.

### *Students Courageously Confront Chrysalis School*

93.    On April 20, 2022, M.W. and four other Chrysalis School students attended the weekly "treatment team" meeting to express their concerns about how Chrysalis School staff were handling reports of Wedemeyer's abuse.

94.    During that meeting, the students recounted, in detail, how and when Chrysalis School was made aware of Wedemeyer's abuse and how Chrysalis School staff ignored, enabled, and perpetuated the abuse. During the meeting, at which Hickman was present, school representatives did not deny the allegations made by the students; nor did they provide any rebuttal to InnerChange Chrysalis' gross (and tortious) mishandling of its response to the abuse allegations.

95.     Just before the April 20, 2022, Treatment Team meeting, Wedemeyer disappeared and stopped reporting to work. Prior to disappearing, Wedemeyer told M.W., among other things: "You're the only one that understands me.  The other girls don't get me the way you do.  I'm leaving, but when you get out of here, I will always take care of you.  You can message me.  If you hear anything weird about me, it's not true." Shortly thereafter, M.W. learned that Wedemeyer had said the same thing to five other girls he had abused.

96.     Just before the Treatment Team meeting, on or about April 16, 2022, M.W. also disclosed the abuse she suffered at Chrysalis School to her mother Amy. By then, M.W. was suffering from extreme emotional distress as a direct result of the abuse she had been subjected to at Chrysalis School. M.W. was afraid to sleep in her own bed and was exhibiting signs of depression and anxiety.

97.     Amy called Hickman the same night that she learned that M.W. had been abused. Hickman acknowledged that he was aware of the abuse allegations in the Fall but that "you cannot believe these girls, they will even lie about their parents and teachers."

98.     Upon hearing that her daughter had been abused, Amy spoke to M.W.'s therapist at Chrysalis School, Ruth Richards-Schlarman ("Richards-Schlarman"). Over the course of three separate conversations, Richards-Schlarman confirmed that M.W.'s emotional and mental health had drastically declined.

Richards-Schlarman said that she had not been made aware of Wedemyer's conduct, that she felt embarrassed to work for Chrysalis, and that Hickman had not followed Montana's mandatory reporting laws. Richards-Schlarman informed Amy that M.W. became so distraught she had stopped attending classes and was not sleeping in her own bed. M.W. was completely unsupported by Chrysalis School staff.

99.     On Monday, April 18, 2022, M.W. chose to confide in three trusted teachers at Chrysalis School and disclosed what Wedemeyer had done to her and other girls at Chrysalis School.  Breaking M.W.'s trust, one of the teachers told other students in class what M.W. had disclosed. This teacher accused the girls of lying and that Wedemeyer was a "good man." As a result, M.W. felt isolated and re-victimized, further compounding her emotional trauma.

100.    Ultimately, on April 19, 2022, Richards-Schlarman strongly recommended that Amy remove M.W. from Chrysalis School and take her home immediately.

101.    Amy went to Montana to rescue M.W. from Chrysalis School days later, on or about April 22, 2022.

102.    After they removed M.W. from Chrysalis School, Parents requested a letter from Richards-Schlarman documenting her concerns over M.W.'s well-being and the necessity of removing M.W. because of the trauma she sustained at

Chrysalis School. Although Richards-Schlarman assured Parents that such letter was forthcoming, the letter never arrived.

103.    Embark issued a tuition refund to Whitcomb on June 15, 2022 in the amount of $15,316.27.

104.    Because of InnerChange Chrysalis' failure to take appropriate and timely disciplinary action against Wedemeyer, and its failure to report the allegations regarding Wedemeyer to the proper authorities as legally required, Wedemeyer, upon information and belief, has evaded criminal prosecution for his conduct.

105.    To Plaintiff's knowledge, Wedemeyer's whereabouts are unknown, and he may have fled the United States.

### *The Aftermath*

106.    Following her departure from Chrysalis School, M.W. has received mental health treatment for the injuries proximately caused by Defendants.

107.    Because of what happened to her at Chrysalis School, M.W. suffers persistent post-traumatic stress that manifests both physically and emotionally. M.W. will receive physical and mental health treatment for the foreseeable future as a proximate cause of Defendants' tortious conduct.

108.    Parents suffer emotionally and financially a result of M.W.'s injuries.

109.    Parents bear the financial burden of M.W.'s ongoing treatment.

110.  Parents also bear emotional trauma from the knowledge that their fifteen-year-old daughter was physically, sexually, psychologically, and emotionally abused. Parents carry the burden of knowing they sent M.W. to live under the care of Chrysalis School staff because they trusted Chrysalis School staff would safeguard her physical and emotional well-being. In that vein, Parents were gravely deceived.

111.  In sum, Defendants, by their negligence, created conditions at the School to enable their employee, Wedemeyer, to sexually abuse minor-female children enrolled at the School, including, but not limited, to M.W.

112.  This was a violation of Defendants' duty of care to M.W. Defendants, by their silence, omissions, misrepresentations, and deceit, led M.W.'s Parents to entrust Chrysalis School with M.W.'s well-being, yet Defendants knew or had reason to know that placing M.W. at the School would place her in proximity to ongoing physical, emotional, psychological, and sexual abuse.

113.  Moreover, Defendants enriched themselves through this ploy. Defendants, by their intentional omissions, violated a statutory duty to report M.W.'s sexual abuse to DPHHS.

114.  Defendants are liable for Defendants' and their employees' overt actions against M.W., their own deceit in relation to Plaintiffs, and their violation of Montana's child protection statute.

115.   Defendants systematically and continuously failed to enact, enforce, correct, remedy, improve, and maintain adequate policies and procedures regarding student safety, student welfare, hiring of employees and workers, retaining of employees and workers, and prevention of child sexual abuse. As alleged throughout this entire pleading, as a direct, factual, and proximate cause of Defendants' negligent, systemic, and continuous failures to enact, enforce, correct, remedy, improve, and maintain adequate policies and procedures regarding student safety, student welfare, hiring of employees and workers, retaining of employees and workers, and prevention of child sexual abuse, M.W. was forced to endure numerous instances of physical, emotional, psychological and sexual abuse.

116.   As a direct and proximate result of the Defendants' negligence, jointly and severally, M.W. and her family have sustained severe and permanent injuries, all and/or some of which are permanent, known and unknown, as well as other personal injuries and damages which are not currently manifested but will arise in the future.

117.   The negligence of the Defendants and their agents and/or employees was a factual cause of and/or placed M.W. at an increased risk of harm for and/or was a substantial factor in causing and/or did directly and proximately cause the severe and permanent personal injuries to M.W. and her family, which include:

      a)   Post-traumatic stress disorder (PTSD);

b)   Sexual abuse;

c)   Sexual assault;

d)   Psychological manipulation;

e)   Harassment;

f)   Physical assault;

g)   Past and future psychological pain and suffering;

h)   Past and future anxiety and fear;

i)   Past and future emotional distress;

j)   Past and future loss of enjoyment of life and loss of life's pleasures;

k)   Past and future embarrassment and humiliation;

l)   Past and future mental anguish;

m)   Emotional trauma;

n)   Anxiety and depression;

o)   Future loss of earning capacity;

p)   Past and future psychiatric care and psychological expenses;

q)   Incidental and other expenses;

r)   All past and future noneconomic damages recoverable under Montana law.

## FIRST CLAIM FOR RELIEF
### Negligence Against All Defendants

2754645.4

118.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

119.   Defendants owed duties of care to M.W. and the Family, including the following:

a)    To provide a therapeutic environment for M.W. consistent with the representations Chrysalis School made on its website;

b)    To provide professional services in conformance with the standards of care expected of like professional services providers; and,

c)    To provide a learning and therapeutic environment free from abuse, harassment, and intimidation;

d)    To report any suspected child abuse to the authorities.

120.   Defendants breached of their duties of care by, among other things:

a)    Negligently and carelessly failing to implement adequate safeguards to ensure the safety of students/enrollees;

b)    Negligently and carelessly failing to provide adequate supervision of extracurricular activities;

c)    Hiring and retention of unqualified personnel;

d)    Negligently and carelessly failing to have and/or enforce adequate policies and procedures regarding relationships between children/students at Chrysalis School and employees;

2754645.4

e)    Negligently and carelessly failing to have and/or enforce adequate policies and procedures regarding employees being alone with children;

f)    Failing to provide an environment safe from sexual assault and sexual abuse to M.W;

g)    Failing to provide an environment safe from harassment and intimidation to M.W;

h)    Negligently and carelessly failing to ensure that staff, particularly Wedemeyer, were adequately trained and supervised, resulting in Wedemeyer's inappropriate conduct with girls, including inappropriate physical contact, inappropriate relationships, and grooming of M.W. and other students to engage in sexual relationships with Wedemeyer;

i)    Failing to report suspected child abuse of children at Chrysalis School, despite having reason to believe M.W. and other children enrolled at Chrysalis School had been abused by Wedemeyer, in direction violation of, and as required by, Mont. Code Ann. § 41-3-201;

j)    Other Negligence as may be proven from facts now exclusively in the possession of Defendants, which may be ascertained after the filing of this Complaint.

121.  As a proximate cause of Defendants' negligence, Plaintiffs have suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Vicarious Liability for the Actions of Wedemeyer Against All Defendants

122.  Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

123.  Montana has created a nondelegable duty of care to protect individuals like M.W. at Mont. Code Ann. § 52-2-801, *et. seq.*

124.  InnerChange Chrysalis must be managed in accordance with Mont. Code Ann. § 52-2-801, *et seq.* and DPHHS rules. The purpose of the legal schematic created by Mont. Code Ann. § 52-2-801, *et seq.* is to safeguard the care of adolescents like M.W.

125.  As a DPHHS licensee, InnerChange Chrysalis owed a statutory duty of care to M.W., an adolescent under its care at Chrysalis School.

126.  This duty of care is nondelegable; it is "an affirmative obligation to ensure the protection of the person to whom the duty runs." *See Smith v. Ripley*, 446 F. Supp. 3d 683, 688-92 (D. Mont. 2020) (citing *Meyer v. Holley*, 537 U.S. 280, 290 (2003).

127.  The relationship between an adolescent enrollee, like M.W., and the programs regulated by Mont. Code Ann. § 52-2-801 is significant and continuous.

Therefore, the relationship warrants the demanding standard of care mandated by the State of Montana in Mont. Code Ann. § 52-2-801.

128.    The actions of employee Wedemeyer at Chrysalis School are anathema to the level of care and safety that InnerChange Chrysalis is required by the State of Montana to ensure for its adolescent enrollees.

129.    Defendants are vicariously liable for the actions of Wedemeyer as stated herein because their conduct violated a nondelegable duty that the Defendants owed to M.W. and Wedemeyer used his position and authority at Chrysalis School to physically, emotionally, psychologically, and sexually abuse and harass M.W.

130.    As a result of Defendants' breaches of their nondelegable duty of care, Plaintiffs have suffered damages in an amount to be proven at trial.

### THIRD CLAIM FOR RELIEF
**Negligent Hiring Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman**

131.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

132.    Defendants, knowing that the female students enrolled at Chrysalis School were vulnerable to abuse and sexual assault, owed a duty to exercise reasonable care in the selection and retention of employees that would have access

to children, and, specifically, to be on the high look-out for employees or staff members who were likely to abuse or sexually assault students.

133. InnerChange Chrysalis was aware or should have been aware of Wedemeyer's unfitness to be employed at Chrysalis School.

134. As may be proven from facts now exclusively in the possession of Defendants, InnerChange Chrysalis either negligently failed to prospectively determine that Wedemeyer posed a threat to minor-female students, like M.W. or was aware or should have been aware of Wedemeyer's unfitness as an employee of InnerChange Chrysalis.

135. As may be proven from facts now exclusively in the possession of Defendants, InnerChange Chrysalis hired Wedemeyer without conducting adequate and legally required background checks or hired Wedemeyer despite InnerChange Chrysalis' knowledge of Wedemeyer's unfitness for employment.

136. By negligently hiring Wedemeyer, Defendants enabled him to sexually, physically, psychologically and emotionally abuse and harass female students at Chrysalis School.

137. As a direct and proximate result of Defendants' failure to thoroughly determine Wedemeyer's employment fitness, both Parents and their minor daughter have suffered damages in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF
### Negligent Supervision Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman

138.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

139.    InnerChange Chrysalis did not properly supervise Wedemeyer.

140.    InnerChange Chrysalis failed to make proper regulations, policies, or procedures governing Wedemeyer's employment.

141.    The earliest known occurrence of Wedemeyer's sexual abuse at Chrysalis School was in the Fall of 2021.

142.    Wedemeyer remained on staff at Chrysalis School until as late as March 25, 2022, when he disappeared and stopped reporting to work. During the intervening six to seven months, Wedemeyer was, through Defendants' negligence, permitted virtually unrestricted and unsupervised access to minor female students, allowing him to abuse them.

143.    As a result of Defendants' inadequate supervision of Wedemeyer, Defendants permitted and/or failed to prevent Wedemeyer's abusive, including sexually abusive, conduct toward minor female students, including M.W.

144.    It was foreseeable Defendants' negligent and inadequate supervision of Wedemeyer would directly and proximately result in the abuse inflicted upon M.W. described throughout this pleading.

2754645.4

145.   As a result of Defendants' breach of their duty to supervise Wedemeyer, Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Negligent Retention Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman**

146.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

147.   Defendants negligently retained Wedemeyer when they were given actual and constructive notice of his repeated sexual, physical, and emotional abuse and harassment of minor females at Chrysalis School but allowed him to remain employed by the school.

148.   Further, Defendants failed to report Wedemeyer to DPHHS as required by M.C.A. § 41-3-201 and Administrative Rules of Montana Rule 37.99.127(2).

149.   By retaining Wedemeyer while on notice that he was sexually harassing abusing girls at Chrysalis School, Defendants breached a duty of care owed to Wedemeyer's victims.

150.   It was foreseeable that this breach would result in the sexual abuse inflicted upon M.W.

2754645.4

151.    As a direct and proximate result of Defendants' failure to supervise Wedemeyer at Chrysalis School, Plaintiffs suffered and continue to suffer damages in amounts to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Negligent Training Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman

152.    Whitcomb re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

153.    Defendants are directly liable for negligently training InnerChange Chrysalis administrators and staff regarding how to identify and respond to sexual abuse and harassment at the School.

154.    Wedemeyer sexually abused and harassed minor female enrollees at Chrysalis School while employed at the School and during the course of such employment.

155.    Reports were made to InnerChange Chrysalis administrators and staff that Wedemeyer sexually abused girls at Chrysalis School beginning in at least the Fall of 2021. These circumstances persisted for months. Neither administrators nor staff at InnerChange Chrysalis had the proper or legally required training to address, identify, and/or report instances of sexual harassment and abuse at Chrysalis School.

156. It was foreseeable that Defendant's failure to adequately train its employees would cause, directly and proximately, the resulting sexual abuse and harm endured by M.W., and other victims at Chrysalis School.

157. As a direct and proximate result of Defendants' failure to thoroughly train Chrysalis School employees, Plaintiffs have suffered and continue to suffer damages in amounts to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress Against All Defendants

158. Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

159. Parents enrolled M.W. at Chrysalis School with an expectation that InnerChange Chrysalis would provide her with a supportive, caring, and enriching environment.

160. In doing so, Parents entrusted Defendants with the physical and mental well-being of M.W.

161. Further, the State of Montana, through Mont. Code Ann. § 52-2-801, requires Defendants to operate Chrysalis School "to monitor and maintain a high standard of care and ensure the health and safety of the adolescents and parents using the programs."

162.   Matriculating to Chrysalis School did not place M.W. in a nurturing and supportive environment, rather it subjected her to a toxic, abusive atmosphere where her risk of being abused was foreseeable.

163.   M.W. was repeatedly sexually abused by Wedemeyer at Chrysalis School, but administrators and staff of InnerChange Chrysalis met her reports of abuse with disinterest and derision—Hickman going so far as to expressly state that victims of Wedemeyer were "asking [to be sexually abused]."

164.   M.W. was also subjected to bullying, theft, and harassment at the school as described in this pleading.

165.   Defendants, their agents, and employees, intentionally dismissed and disregarded reports of inappropriate and abusive behavior by its staff, including Wedemeyer, against students at Chrysalis School.

166.   Defendants, their agents, and employees intentionally failed to report Wedemeyer's abuse of minor female students as required by Montana law.

167.   Defendants, their agents, and employees, intentionally dismissed and disregarded reports of harassment, theft, intimidation, and abusive conduct by its staff and students against other students at Chrysalis School.

168.   As a direct and proximate cause of Defendants' acts and/or omissions set forth above, M.W. suffers from extreme emotional distress, including: from anxiety, headaches, insomnia, nightmares, addiction, and lack of trust, and she

suffers emotionally such that she must attend regular therapy sessions for an indefinite timeframe.

169.  M.W.'s severe emotional distress was the reasonably foreseeable consequence of the Defendant's intentional acts or omissions.

170.  Defendants' intentional infliction of emotional distress upon M.W. caused injury and warrants punitive damages, *inter alia*, in accordance with Mont. Code Ann. § 27-1-220.

## EIGHTH CLAIM FOR RELIEF
### Negligent Infliction of Emotional Distress Against All Defendants

171.  Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

172.  Defendants, through their negligent action and inaction described throughout this Complaint, failed to prevent and enabled Wedemeyer to victimize M.W. and other young female students.

173.  As a result of Defendants' negligence, M.W. has suffered severe emotional distress.

174.  Being a victim of sexual abuse violated M.W.'s right to bodily integrity and privacy. It also caused shame and fear, both of which continue to haunt M.W. in her day-to-day life. Being a victim of Wedemeyer's predations has altered M.W.'s mood and disrupted relationships with friends and family. M.W. suffers physically from anxiety, presenting as headaches, nightmares, and trust

issues, and she suffers emotionally such that she must attend weekly therapy sessions for an indefinite timeframe.

175.    It was reasonably foreseeable that Defendants' negligence would cause M.W. severe emotional distress.

176.    M.W. has suffered damages in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF
**Violation of Montana Unfair Trade Practices and Consumer Protection Act of 1973 Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman**

177.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

178.    The Montana Consumer Protection Act renders unfair or deceptive acts or practices in the conduct of any trade or commerce unlawful. *See* Mont. Code Ann. § 30-14-103.

179.    Plaintiffs are consumers. Defendants supplied professional services to Plaintiffs primarily for Plaintiffs' personal, family or household purposes.

180.    As set forth throughout this Complaint, Defendants engaged in acts or practices that did and were likely to mislead consumers like Plaintiffs.

181.    Among other things, Defendants represented that Chrysalis School is a place that provides young girls with "a nurturing and supportive environment" that "fosters identity development, self-confidence and a sense of belonging."

182.   Defendants extolled the benefits of Chrysalis School to young girls and their families on websites controlled by Embark and Vive.

183.   The Chrysalis School enrollment agreement, the enrollment agreement addended documents, the Chrysalis School student handbook, and other informational brochures (physical and digital) represent that InnerChange Chrysalis manages a school for adolescent girls that is safe and enriching and that its staff are highly trained and qualified.

184.   Plaintiff's interpretation and understanding of the representations, omissions, and practices of InnerChange Chrysalis were reasonable under the circumstances.

185.   At the time these representations and proclamations were made to Parents in the Fall of 2022, Defendants were on constructive and actual notice that Wedemeyer was actively sexually abusing minor-female enrollees at Chrysalis School and that students were being subjected to other physical and emotional abuse at Chrysalis School.

186.   The representations of the School as "a nurturing and supportive environment" beguiled prospective enrollees and their parents.

187.   Oliver paid tuition to InnerChange Chrysalis via Embark to provide M.W. with the level of care promised on its Website.

188.   Defendants' misleading representations, omissions, and practices were material to the Family's decision to enroll M.W. at Chrysalis School.

189.   Defendants' representations at to the characteristics, benefits, and other qualities of Chrysalis School were false or misleading.

190.   Defendants advertised Chrysalis School's professional services with the intent not to provide them as advertised.

191.   Defendants violated the Montana Consumer Protection Act causing damages general and special to Plaintiffs. *See* Mont. Code Ann. § 30-14-103.

192.   Pursuant to Mont. Code Ann. § 30-14-133, Defendants are liable for Plaintiffs' damages, costs and attorneys' fees incurred in this suit, and treble damages.

### TENTH CLAIM FOR RELIEF
**Negligent Misrepresentation Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman**

193.   Plaintiffs reallege and incorporate the foregoing paragraphs as though fully set forth herein.

194.   Defendants made representations of fact to the Family in order to induce parents to enroll M.W. at Chrysalis School.

195.   Those representations include, but are not limited to, those identified in this pleading.

196.   Those representations were false.

2754645.4

197.   Plaintiffs had reasonable grounds for believing those representations to be true.

198.   The representations were made with the intent that the Family would rely on them.

199.   The Family was unaware that the representations were false and acted in reliance thereon.

200.   The Family justifiably relied on the representations and sustained damages, general and special, as a result.

**ELEVENTH CLAIM FOR RELIEF**
**Breach of Fiduciary Duty Against All Defendants**

201.   Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

202.   Parents placed faith, confidence, and trust in Defendants in conjunction with the care of M.W. and InnerChange Chrysalis' representations about its capability to provide a stable and safe therapeutic and scholastic boarding school environment.

203.   Due to the nature of Chrysalis School, i.e. a school in which limited communications are permitted with other students, and parents, and a high level of control is exercised by Defendants over the activities conducted within the Chrysalis School, there exists a special and unique relationship between students and their families, and Defendants, in which Defendants occupy a unique position

of control, and in which Plaintiffs lack control and are highly dependent upon Defendants.

204.    The foregoing factors establish a fiduciary relationship owed by Defendants to the Family.

205.    Moreover, Defendants accept the duty of healthcare for its minor-female enrollees, which is formalized through a signed power of attorney between Defendants and the parent(s) or guardian(s) of the enrollee.

206.    Whitcomb executed a power of attorney with Defendants to provide mental healthcare to his daughter, M.W. *See* **Exhibit D**.

207.    When a power of attorney is executed under Mont. Code Ann. § 72-5-103 it creates powers and duties related to minor child's "medical or other professional care, treatment, or advice."

208.    Defendants breached their fiduciary duties owed to the Family.

209.    As a result of this breach, Plaintiffs suffered damages in an amount to be proven at trial.

### TWELFTH CLAIM FOR RELIEF
**Constructive Fraud Against Innerchange Chrysalis, Embark, CALO, Solacium, Vive, and Hickman**

210.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

211.  Defendants had a duty to Parents flowing from acceptance of a power of attorney Parents granted to Defendants for the care and safety of M.W. during her attendance at the School.

212.  At the time Defendants assumed the duties and responsibilities granted by the power of attorney issued by Parents, they withheld their knowledge that their daughter, M.W., would face a foreseeable risk of being abused under their care.

213.  Defendants misled Parents by expressing and implying that M.W. would be safe, both physically and mentally, under Defendants' care.

214.  In misleading Parents, by withholding material facts that would inform their decision to enroll or not enroll M.W. at the School, Defendants gained financial advantage over them.

215.  As a result of Defendants' fraud, Plaintiff have suffered damages in an amount to be proven at trial.

## CLAIM FOR PUNITIVE DAMAGES

As a result of Defendants' conduct described above for which it is liable directly and vicariously, jointly and severally, the Family is entitled to special and/or punitive damages in an amount to be determined at trial pursuant to M.C.A. § 27-1-220.

## PRAYER FOR RELIEF

2754645.4

WHEREFORE, Plaintiffs respectfully pray for the following relief:

1.  For a judgment against Defendants on all counts; and

2.  An award of damages in an amount to be proven at trial, including general damages, special damages, non-economic damages, punitive damages, treble damages in accordance with the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-103); and

3.  Special and/or punitive damages; and

4.  An award of Plaintiffs' costs, expenses, and attorney's fees; and

5.  An award of pre- and post-judgment interest; and

6.  An order directing Defendants to immediately comply with Mont. Code Ann. § 41-3-201 by reporting all known or suspected instances of child abuse occurring at Defendants' facilities to DPHHS; and

7.  Parents pleads this Court to pierce the corporate veil; and

8.  Any and all other further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: April 25, 2023                    Respectfully submitted,

/s/ _____

2754645.4

Bernard J. Everett
EVERETT COOK LAW
217 E. Park Street
Anaconda, MT 59711
Phone: (406) 299-2770
beneverett@everettlawpllc.com

Christopher D. Bryan*
Andrea S. Bryan*
GARFIELD & HECHT, P.C.
625 E. Hyman Avenue, Suite 201
Aspen, Colorado 81611
Phone: 970.925.1936
Facsimile: 970.925.3008
cbryan@garfieldhecht.com
abryan@garfieldhecht.com
*Application for Admission Pro Hac Vice Pending