IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| OLIVER WHITCOMB and AMY CLIFFORD, on behalf of M.W., a minor, | CV 23–39–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| INNERCHANGE CHRYSALIS, LLC, d/b/a CHRYSALIS THERAPEUTIC BOARDING SCHOOL; CHANGE ACADEMY AT LAKE OF THE OZARKS, LLC and SOLACIUM HOLDINGS, LLC, d/b/a EMBARK BEHAVIORAL HEALTH; INNERCHANGE VIVE, LLC; COREY HICKMAN; and AMBERLI WYATT, | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss. (Doc. 20.) For the

reasons herein, the Motion is GRANTED in part and DENIED in part.

**BACKGROUND**[1]

## I.   The Parties

Plaintiffs Oliver Whitcomb and Amy Clifford ("Parents") brought this

---

[1] The background section is taken from the First Amended and Supplemental Complaint ("FAC") and Demand for Jury Trial (Doc. 19). The facts are assumed to be true for the purpose of resolving the Motion to Dismiss.

diversity action on behalf of their minor daughter, M.W., alleging that Defendants and their employees abused M.W. while she was a student at Chrysalis School, a therapeutic boarding school located in Eureka, Montana. M.W. is a fifteen-year-old female who currently resides in Idaho with her parents.

Defendant InnerChange Chrysalis, LLC ("InnerChange") operates Chrysalis School. Defendants Change Academy at Lake of the Ozarks, LLC ("CALO") and Solacium Holdings, LLC ("Solacium") operate under the trademark name Embark Behavior Health ("Embark"). Defendant Embark provides information and advertisements about Chrysalis School on its website. Embark owns and operates therapy programs like Chrysalis School at numerous locations throughout the United States. Embark controls and/or operates Chrysalis School. Defendant InnerChange Vive, LLC ("Vive") also provides information and advertisements about Chrysalis School on its website.

Defendant Corey Hickman has held the role of Executive Director of Chrysalis School since January 2015. At all times relevant to this case, Hickman operated Chrysalis School and managed its employees. Hickman is also identified as an Embark "team member" on Embark's website, and as a Vive "team member" on Vive's website. Hickman represents himself to be a "certified therapeutic recreation specialist."

Defendant AmberLi Wyatt was an employee and agent of Chrysalis School. Wyatt managed one of the residential homes at Chrysalis School.

## II.     Chrysalis School and Tyler Wedemeyer

Chrysalis School is a private alternative adolescent residential program licensed to operate in the State of Montana by the Montana Department of Health and Human Services ("DPHHS"). Chrysalis School's mission is to provide at-risk young girls struggling with a variety of emotional, relational, and academic challenges with a nurturing and supportive environment that fosters identity development, self-confidence, and a sense of belonging. Chrysalis School proclaims that its staff consists of highly qualified and caring academic and clinical experts. Through Chrysalis School's website, Defendants have declared that its therapists "bring an expertise that allows students to develop healthy relationships and positive, sustaining habits" and "[t]he Chrysalis clinical approach is to build connection, heal wounds, and find strength." A crucial aspect of Chrysalis School's curriculum includes "adventure therapy," which involves taking students on various outdoor excursions including skiing, hiking, rafting, rock climbing, and boating.

Chrysalis School accepts students between the ages of thirteen to eighteen years old. Enrollees leave their families and relocate for full-time residency and supervision on Chrysalis School's 47-acre campus. Students eat, bathe, recreate,

sleep, and receive education and counseling at Chrysalis School. Enrollees live on site in one of three residential facilities: Lake House, Horse House, or The Cottage.

Tyler Wedemeyer began his employment with Chrysalis School in July or August of 2021. Wedemeyer, a male in his early thirties, was an "adventure staff" member but worked in every department and in various roles at Chrysalis School, including residential staff, transport, and as a substitute teacher.

Between September 2021 and April 2022, Wedemeyer verbally, physically, sexually, psychologically, and/or emotionally abused and harassed at least five female students. Wedemeyer entered the female students' rooms and masturbated over their beds while he thought they were sleeping. Wedemeyer walked in on girls while they were changing and while in the bathroom and touched their intimate parts, including their breasts and buttocks. In or around Fall of 2021, Wedemeyer attempted to begin a romantic relationship with one student.

In Fall of 2021, at least one student reported her concerns about Wedemeyer's inappropriate behavior to Chrysalis School staff. The student's report—which was sent to Wyatt—indicated that she had concerns that Wedemeyer posed a risk to the female students of the school. Wyatt did not report the suspected abuse, but rather told the student that she "didn't understand how serious the allegations were" and that "the allegations could ruin Wedemeyer's career." Wyatt also defended Wedemeyer's conduct on the basis that he is a "good

Mormon." Chrysalis School did not conduct an investigation into Wedemeyer's conduct based on the student's report. No Chrysalis School employee reported the known or suspected abuse to the Department of Public Health and Human Services ("DPHHS").

In February 2022, an employee of Innerchange, Darya Cooper, reported concerns about witnessing Wedemeyer's inappropriate physical contact with another student. On at least three occasions, Cooper expressed her concerns to "Hickman and/or other Chrysalis School staff" about abuse, neglect, and the improper care of enrollees. Cooper also expressed her concern that InnerChange staff were not properly trained. Innerchange did not conduct any investigations following Cooper's report. InnerChange did not terminate Wedemeyer's employment at Chrysalis School after learning of his conduct. Rather, in response to learning of Wedemeyer's attempt to initiate a relationship with a student who was living in Horse House, agents of InnerChange transferred Wedemeyer to oversee Lake House.

### III.   M.W.

M.W. attended the Wingate Wilderness Program in Utah from November 2021 through January 2022. In early January 2021, M.W.'s family began working with an educational and therapeutic consultant, Thrive Treatment Consulting ("Thrive"), to determine the appropriate next steps for M.W.'s education, growth,

5

and treatment. In collaboration with Thrive, M.W.'s parents chose Chrysalis School as M.W.'s next placement. Leading up to M.W.'s enrollment at Chrysalis School, M.W.'s parents communicated with representatives of InnerChange and Embark. Likewise, Thrive communicated with InnerChange employees prior to and during M.W.'s attendance at Chrysalis School. No representative or employee of InnerChange, Embark, or Chrysalis School mentioned the possibility that Chrysalis School could be an unsafe environment for M.W. Relying on the representations made by Defendants about the benefits Chrysalis School would offer M.W., Plaintiffs entrusted Defendants with M.W.'s physical and emotional well-being.

M.W. was admitted to Chrysalis School in January 2022, at the age of 14, and began attending Chrysalis School later that month. M.W.'s parents and grandparent paid $12,000 a month in tuition via automatic bank withdrawals to Embark. Upon arrival at Chrysalis School M.W. was assigned to live at Horse House, where Wedemeyer worked as a residential staff. Wedemeyer was also assigned to conduct M.W.'s daily check-ins.

Almost immediately, Wedemeyer gained M.W.'s trust and began grooming her, including persuading M.W. to divulge personal, sensitive information of a sexual nature. In February 2022, M.W. broke her collar bone and was labeled a "Person Unable to Participate" in outdoor adventures, or "PUP". On one occasion,

Wedemeyer convinced M.W. and other PUPs to go for a drive, and asked M.W. to sit in the front passenger seat with him. Wedemeyer allowed M.W. to access music on his phone. While M.W. did so, Wedemeyer touched M.W. on the inner thigh. Similarly, at dinner, Wedemeyer would sit next to M.W. and inappropriately touch her legs and thighs.

Wedemeyer's conduct toward M.W. continued to escalate. On several occasions, Wedemeyer intentionally and without consent, observed M.W. naked while changing. Wedemeyer would open the bathroom door without knocking or announcing his presence while M.W. was changing. On another occasion, Wedemeyer intentionally observed M.W. topless without her consent while she was changing after swimming in a lake. After M.W. wrapped herself in a towel, Wedemeyer approached M.W. and whispered "You better have something underneath that towel . . . I know you don't." Wedemeyer would also come into M.W.'s room and watch her, and at times, Wedemeyer would inappropriately touch M.W.'s body while she was in bed. During one daily check-in, Wedemeyer hugged M.W. and groped her buttocks without her consent.

Wedemeyer was not the only source of abusive or harassing conduct at Chrysalis School. Chrysalis School tolerated open and public sexual conduct, including sexual intercourse, between students on campus. Chrysalis School also

tolerated theft of students' belongings, including their underwear and other clothing.

On April 16, 2022, M.W. disclosed the abuse she had suffered to her mother Amy. Amy called Hickman the same night. On the phone call, Hickman acknowledged that he was aware of the abuse allegations the previous Fall, but stated that "you cannot believe these girls, they will even lie about their parents and teachers." Amy also spoke to M.W.'s therapist at Chrysalis School, Ruth Richards-Schlarman, who confirmed that M.W.'s emotional and mental health had drastically declined. Richards-Schlarman informed Amy that M.W. had become so distraught she had stopped attending classes and was not sleeping in her own bed.

On April 18, 2022, M.W. disclosed to three teachers at Chrysalis School what Wedemeyer had done to her and other girls. One of the teachers told other students what M.W. had disclosed and accused the girls of lying, defending Wedemeyer as a "good man." As a result, M.W. felt isolated and revictimized, further compounding her emotional trauma.

On April 20, 2022, at a weekly "treatment team" meeting, M.W. and four other girls expressed concerns to Chrysalis School representatives, including Hickman, about how Chrysalis School was handling reports of Wedemeyer's abuse. School representatives did not deny the allegations made by the students or explain InnerChange's response—or lack thereof—to the abuse allegations.

Just before the April 20, 2022 Treatment Team meeting, Wedemeyer disappeared and stopped reporting to work. Prior to disappearing, Wedemeyer told M.W. that she was "the only one that understood" him. Wedemeyer also told M.W. "I'm leaving, but when you get out of here, I will always take care of you. You can message me. If you hear anything weird about me, it's not true." Shortly after, M.W. learned that Wedemeyer had said the same thing to five other girls that he had abused.

On April 19, 2022, Richards-Schlarman strongly recommended that Amy remove M.W. from Chrysalis School. On April 22, Parents removed M.W. from Chrysalis School. On June 15, 2022, Embark issued a tuition refund to Plaintiffs in the amount of $15,316.27.

Plaintiffs brought the present action alleging 13 claims for relief: Negligence against all Defendants (Count 1); Vicarious Liability against all Defendants (Count 2); Negligent Hiring against Innerchange, Embark, CALO, Solacium, Vive, and Hickman (Count 3); Negligent Supervision against Innerchange, Embark, CALO, Solacium, Vive, and Hickman (Count 4); Negligent Retention against Innerchange, Embark, CALO, Solacium, Vive, and Hickman (Count 5); Negligent Training against Innerchange, Embark, CALO, Solacium, Vive, and Hickman (Count 6); Negligence Per Se against All Defendants (Count 7); Intentional Infliction of Emotional Distress against all Defendants (Count 8); Negligent Infliction of

Emotional Distress against all Defendants (Count 9); Violation of Montana Unfair

Trade Practices and Consumer Protection Act of 1973 against Innerchange,

Embark, CALO, Solacium, Vive, and Hickman (Count 10); Negligent

Misrepresentation against Innerchange, Embark, CALO, Solacium, Vive, and

Hickman (Count 11); Breach of Fiduciary Duty against all Defendants (Count 12);

and Constructive Fraud against Innerchange, Embark, CALO, Solacium, Vive, and

Hickman (Count 13).

Defendants filed the present Motion, requesting that the Court dismiss all

Counts. (Doc. 20.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Dismissal is appropriate "where there is no cognizable legal theory or an absence

of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v.

Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks

omitted). "In general, the [Rule 12(b)(6)] inquiry is limited to the allegations in the

complaint, which are accepted as true and construed in the light most favorable to the plaintiff"; however, the Court "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal citation omitted). Because this Court is exercising its diversity jurisdiction over this matter, Montana's substantive law applies. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003).

DISCUSSION

I.      **Montana Consumer Protection Act ("MCPA"), Fraud, and Business Tort Claims (Counts 10–13)**

Defendants first argue that Counts 10–13 should be dismissed because Plaintiffs fail to state consumer protection, fraud, and business tort claims. (Doc. 21 at 10.) The Court will address each argument in turn.

A. MCPA (Count 10)

The MCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103. "An unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Rohrer v. Knudson*, 203 P.3d 759, 764 (Mont. 2009). While the MCPA does not further define unfair or deceptive acts, Montana courts "give[] due consideration and weight to

11

interpretations of the Federal Trade Commission and federal courts regarding § 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C.S. 45(a)(1), as required by Mont. Code. Ann. § 30-14-104(1)." *Id.* "Examples of unlawful acts or practices in the conduct of trade or commerce are listed in a Montana Regulation," Administrative Rule of Montana 23.19.101. *Id.* at 763.

Defendants argue that Plaintiffs do not state one of the unfair, anti-competitive acts enumerated in the A.R.M. (Doc. 21 at 11.) According to Defendants, Plaintiffs' claim under the MCPA must fail because the FAC does "not allege that M.W. did not receive the services DPHHS licenses Chrysalis to provide [nor] that they were billed for services not provided." (Doc. 21 at 11.)

In response, Plaintiffs point out that the list of examples of unlawful acts or practices found in the A.R.M. are meant to be illustrative, not a limiting list of what may constitute an unfair business practice. (Doc. 24 at 12.) Plaintiffs highlight that the MCPA "specifically refers to federal regulations for more examples of unfair trace practices," and cites a Federal Trade Commission regulation section that relates to unscrupulous schools. (*Id.* at 12–13.) That regulation states, in relevant part, that:

> [i]t is deceptive for an Industry Member to misrepresent, directly or indirectly, expressly or by implication, in advertising, promotional materials, recruitment sessions, or in any other manner, the size, location, services, facilities, curriculum, books and materials, or equipment of its school or the number of educational qualifications of its faculty and other personnel.

12

16 C.F.R. § 254.4(a). The section applies to

> persons, firms, corporations, or organizations engaged in the operation of privately owned schools that offer resident or distance courses, training, or instruction purporting to prepare or qualify individuals for employment in any occupation or trade, or in work requiring mechanical, technical, artistic, business, or clerical skills, or that is for the purpose of enabling a person to improve his appearance, social aptitude, personality, or other attributes. These Guides do not apply to resident primary or secondary schools or institutions of higher education offering at least a 2-year program of accredited college level studies generally acceptable for credit toward a bachelor's degree.

*Id.* § 254.0(a).

Defendants contend, and the Court agrees, that the aforementioned regulation proscribes misrepresentation related to the operation of private vocational and distance educational schools. (Doc. 25 at 5.) Meanwhile, the FAC alleges that Chrysalis School holds "itself out as a "47-acre haven for students ages thirteen to eighteen struggling with a variety of emotional, relational, and academic challenges." (Doc. 19 ¶ 20.) The Court is not inclined to shoehorn the allegations of the FAC into the MCPA via this federal regulation absent Montana law that supports such a reach. Accordingly, the Court finds that Plaintiffs have failed to allege sufficient facts to support a cognizable legal claim under the MCPA; as such, Count 10 is DISMISSED.

## B. Negligent Misrepresentation Against Innerchange, Embark, CALO, Solacium, Vive, and Hickman (Count 11)

Under Montana law, the essential elements of negligent misrepresentation are:

> (a) the defendant made a representation as to a past or existing material fact; (b) the representation must have been untrue; (c) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; (d) the representation must have been made with the intent to induce the plaintiff to rely on it; (e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation and it must have been justified in relying upon the representation; and (f) the plaintiff, as a result of its reliance, must sustain damage.

*Osterman v. Sears*, 80 P.3d 435, 438 (Mont. 2003). Defendants claim that the FAC fails to allege a representation, falsity, intent to induce, or reliance. The Court disagrees.

The FAC alleges that "Chrysalis School has proclaimed that its mission is to provide at-risk young girls 'struggling with a variety of emotional, relational, and academic challenges,' with 'a nurturing and supportive environment' that 'fosters identity development, self-confidence and a sense of belonging.'" (Doc. 19 ¶ 21.) The FAC further alleges that "[u]nbeknownst to [Parents], but known to Defendants[,] as early as the Fall of 2021, Wedemeyer had been abusing minor female students at Chrysalis School." (*Id.* ¶ 46.) The FAC also alleges that Chrysalis School tolerated

14

open sexual conduct and theft of students' belongings. (*Id.* ¶¶ 69–70.) Taking these alleged facts as true, the Court is satisfied that Defendants made false representations as to material facts satisfying the first and second elements of negligent misrepresentation. The Court further finds that Defendants could not have reasonably believed that Chrysalis provided a nurturing and supportive environment for enrollees while the alleged conduct was taking place, and therefore, the third element of negligent misrepresentation is satisfied.

Moving to the remaining elements, the FAC alleges the following: Defendants made the above representations to the family in order to induce parents to enroll M.W. at Chrysalis School; Plaintiffs had reasonable grounds for believing those representations were true; the representations were made with the intent that the family would rely on them; the family was unaware that the representations were false and acted in reliance on them; and the family justifiably relied on the misrepresentations and sustained damages as a result. (*Id.* ¶¶ 212–19.) The Court finds that these allegations, taken as true, satisfy the remaining elements of negligent misrepresentation.

15

Plaintiffs have alleged sufficient factual matter, accepted as true, to state a facially plausible claim of negligent misrepresentation. Accordingly, Defendants' motion to dismiss Count 11 is DENIED.

### C. Breach of Fiduciary Duty Against all Defendants (Count 12)

Next, Defendants argue that Count 12, which alleges a breach of fiduciary duty against all Defendants, should be dismissed because no fiduciary duty existed between Defendants and Plaintiffs. (Doc. 21 at 13–14.)

Under Montana law, "[t]he existence of a fiduciary duty depends upon satisfactory proof of a special relationship." *Davis v. Church of Jesus Christ of the Latter Day* Saints, 852 P.2d 640, 646 (Mont. 1993) (overruled on other grounds by *Gliko v. Permann*, 130 P.3d 155 (Mont. 2006)). To determine whether a special relationship exists between the parties, a court may be required to make a fact-intensive inquiry. *Gliko*, 130 P.3d at 161. Whether a special relationship gives rise to a fiduciary duty is a question of law for the court to determine. *Id.*

Here, Plaintiffs argue that "a fiduciary duty was created, by law, when Plaintiffs executed a power of attorney granting Defendants power to provide medical healthcare to M.W." (Doc. 24 at 16–17.) The Court is not convinced. Plaintiffs cite *Davis v. Davis*, 23 P. 715, 716 (Mont. 1890), for

16

the proposition that "Montana recognizes the common-sense idea that being granted a power of attorney creates a fiduciary duty." (Doc. 24 at 17.) In *Davis*, plaintiff Lewis Davis granted defendant Joseph Davis power of attorney, authorizing Joseph to sell and convey Lewis's real estate on Lewis's behalf. 23 P. at 715. Joseph defrauded Lewis by conveying the real estate without consideration to a third party, who then conveyed the real estate without consideration to Joseph. *Id.* Lewis sued Joseph, and the Montana Supreme Court determined that "Joseph Davis, by the power of attorney, was constituted the agent of Lewis Davis. He was in a fiduciary relation." *Id.* at 716.

The Court does not construe the Montana Supreme Court's holding in *Davis* as creating a fiduciary duty any time a power of attorney is granted. A power of attorney may be a fact that, combined with other facts, gives rise to a special relationship. However, here, Plaintiffs have not alleged sufficient facts to allow the Court to draw a reasonable inference that a fiduciary relationship existed between Plaintiffs and Defendants.

Therefore, the Court finds that there is no plausible breach of fiduciary duty claim against Defendants. Count 12 is DISMISSED.

## D. Constructive Fraud against Innerchange, Embark, CALO, Xolacium, Vive, and Hickman (Count 13)

Constructive fraud consists of "any breach of any duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person." Mont. Code Ann. § 28-2-406(1); *see also Drescher v. Malee*, 519 P.3d 17, 23 (Mont. 2022). "Courts may invoke constructive fraud as a matter of law to prevent a party from being unjustly enriched as a result of false statements made, even if the false statement is not knowingly made . . . where a vendor by his conduct or words creates a false impression concerning a matter of vital importance to the purchaser." *Durbin v. Ross*, 916 P.2d 758, 762 (Mont. 1996).

Defendants contend that Plaintiffs' constructive fraud claim fails to state: (1) that Defendants acquired a beneficial advantage over Plaintiffs by misleading them; (2) a false statement; and (3) how Defendants were enriched as a result of the false statement. (Doc. 21 at 15.) The Court disagrees.

The FAC alleges that Defendants gained a beneficial advantage over Plaintiffs by promising a safe and supportive environment that did not actually exist. For example, Plaintiffs allege that "Chrysalis School has

18

proclaimed that its mission is to provide at-risk girls struggling with a variety of emotional, relational, and academic challenges, with a nurturing and supportive environment that fosters identity development, self-confidence and a sense of belonging." (Doc. 19 ¶ 21.) Plaintiffs further allege that "[p]rior to M.W.'s enrollment at Chrysalis School, Parents spoke to representatives of InnerChange and Embark . . . to gain insight about Chrysalis School's environment." (*Id.* ¶ 40.) Despite knowing as early as the Fall of 2021 that Wedemeyer had been abusing minor students at Chrysalis School, the representatives did not convey to Parents the possibility that Chrysalis School would present an unsafe environment for M.W. (*Id.* ¶¶ 40, 42, 46.) In exchange for Chrysalis School's services, Plaintiffs paid Defendants $12,000 a month. (*Id.* ¶ 44.)

The Court finds these facts, taken as true, support a plausible claim of constructive fraud. Defendants gained an advantage over Plaintiffs by accepting tuition from Plaintiffs in exchange for the promise of a safe, supportive environment for M.W.—an environment that, according to the FAC, did not in fact exist.

Defendants' Motion to Dismiss Count 13 is DENIED.

## II.      Negligence Per Se (Count 7)

Next, Defendants argue that Count 7—alleging negligence per se for failure to report pursuant to Mont. Code. Ann. § 41-3-201—should be dismissed because Plaintiffs failed to establish that Defendants violated a particular statute. (Doc. 21 at 17.)

Mont. Code Ann. § 41-3-201 provides that

[w]hen the professionals and officials listed in subsection (2) know or have reasonable cause to suspect, as a result of information they receive in their professional or official capacity, that a child is abused or neglected by anyone regardless of whether the person suspected of causing the abuse or neglect is a parent or other person responsible for the child's welfare, they shall report the matter promptly to the [D]epartment [of Public Health and Human Services]

Included in the list of professionals and officials set forth in subsection two are foster care, residential, and institutional workers. § 41-3-201(f).

First, Defendants claim that the FAC alleges only "grooming" of students prior to M.W.'s enrollment, and grooming does not trigger Montana's reporting statute. (Doc. 21 at 18.) Not so. The FAC alleges that "[u]pon information and belief, Wedemeyer verbally, physically, sexually, psychologically, and/or emotionally abused and harassed at least five other female students between September 2021 and April 20, 2022." (Doc. 19 ¶ 75.) The FAC further alleges that "Wedemeyer entered the female students' rooms and masturbated over their beds while he thought they were sleeping, regularly walked in on girls while they were

20

changing and while in the bathroom, and touched their intimate parts including their breasts or buttocks." (*Id.* ¶ 76.)

Defendants ask this Court to find that an adult's nonconsensual touching of a minor's breasts and buttocks does not fall under the umbrella of child abuse under the Montana Code. Apparently, a review of the relevant law is warranted.

Included in the statutory definition of sexual abuse of a minor are "sexual assault" and "sexual abuse," as described in Title 45, Chapter 5. § 41-3-102(22). Title 45, Chapter 5 defines "sexual assault" as sexual contact without consent. § 45-5-502(1). "Sexual contact" is defined as the "touching of the sexual or intimate parts of the person of another, directly or through clothing, in order to knowingly or purposely: (a) cause bodily injury to or humiliate, harass, or degrade another; or (b) arouse or gratify the sexual response or desire of either party. § 45-2-101(67).

The Montana Supreme Court "has liberally construed what constitutes 'touching of the sexual or other intimate parts of the person.'" *State v. Kao*, 800 P.2d 714, 717 (Mont. 1990). The rubbing of buttox, inner thighs, stomach, and chest are all included in the definition. *Id.* At risk of understatement, the Court is confident that the alleged behavior constitutes sexual contact and is thus considered child abuse under Montana law.

Next, Defendants contend that § 41-3-201 imposes only a government obligation—in other words, a public duty—and Defendants therefore had no specific duty to M.W. and her parents. (Doc. 21 at 18–19.) Defendants cite to three cases in which federal district courts in Missouri held that Missouri's mandatory reporting statute creates only a government obligation. (*Id.* at 19.) Plaintiffs counter that Defendants' position is at odds with the plain language of the statute. (Doc. 24 at 19.) The Court agrees with Plaintiffs.

To begin, the Court notes that the cases cited by Defendants offer interpretations from courts in a different jurisdiction of a *Missouri statute*, not the statute that Plaintiffs allege Defendants have violated here. Defendants' citation to these cases is creative at best; the Court declines the invitation to rely on these cases when there is precedent from this Court directly analyzing Montana's reporting statute. For example, this Court has held that "Montana's statutory scheme concerning child abuse and neglect reporting requires mental health professionals," like Defendants, "to report the matter to DPHHS when they 'know or have reasonable cause to suspect as a result of information they receive in their professional capacity, that a child is abused or neglected,'" and "[t]he failure to make this report subjects mental health professionals," like Defendants, "to civil liability and criminal sanctions." *Briese v. Montana, Dept. of Pub. Health & Hum. Serv., Child & Fam. Servs. Div.*, 2011 WL 338300, at *3 (D. Mont. Jan. 31, 2011)

(quoting § 41-3-201). Under *Briese*, Defendants had a duty to report any suspicions of abuse or neglect of a child to DPHHS.

The Court must next determine if Plaintiffs have plead facts sufficient to support a plausible claim that Defendants breached their duty to report.

According to the FAC, in the Fall of 2021, a student reported Wedemeyer's behavior to Chrysalis School staff. (*Id.* ¶ 79.) That report was sent to AmberLi Wyatt, manager of one of the houses, who—instead of making the statutorily required report to DPPHS—told the reporting student that the student "didn't understand how serious the allegations were and that the allegations could ruin Wedemeyer's career." (*Id.*) Wyatt told the student to report the abuse to Wedemeyer's cousin who worked as an art teacher at Chrysalis School. (*Id.* ¶ 80.) Wyatt further defended Wedemeyer's conduct on the basis that Wedemeyer was a "good Mormon." (*Id.* ¶ 81.) Chrysalis never reported allegations of abuse by Wedemeyer to DPPHS. (*Id.* ¶ 92.)

This was not the only instance in which Chrysalis School staff were informed of potential abuse and neglect of Chrysalis students. On at least three occasions, former Chrysalis employee Darya Cooper expressed concerns about abuse, neglect, and improper care of Chrysalis students to Hickman and other Chrysalis staff. (*Id.* ¶¶ 79–89.) In April 2022, M.W. and four other Chrysalis students expressed their concerns to Hickman and other school representatives

regarding how Chrysalis staff handled reports of Wedemeyer's abuse. (*Id.* ¶ 98–99.) The same month, Hickman admitted that Chrysalis staff were aware of allegations of abuse against Wedemeyer as early as the Fall of 2021, but that Chrysalis did not report the suspected abuse to DPPHS. (*Id.* ¶ 96.)

The Court finds the foregoing facts sufficient to support Plaintiffs' theory that Defendants breached their duty to report suspected child abuse. As such, Plaintiffs have alleged a plausible negligence per se claim under Montana law. Defendants' Motion to Dismiss Count 7 is DENIED.

### III.   Vicarious Liability Duty of Care (Count 2)

"Vicarious liability is not based upon the defendant's own fault. Rather, it is based upon the principle that he must bear legal responsibility for another's wrong." Dan B. Dobbs et al., *Dobbs' Law of Torts* § 425 (2d ed.). Here, while Plaintiffs allege that Wedemeyer acted within the scope of his employment, the FAC only pleads a nondelegable duty theory. Regardless, for the reasons set forth below, the Court finds that the FAC alleges sufficient facts to infer the existence of a nondelegable duty.

"[A] nondelegable duty is an affirmative obligation to ensure the protection of the person to whom the duty runs." *Meyer v. Holley*, 537 U.S. 280, 290 (2003) (citation omitted) (alteration in original). As such, a nondelegable duty "go[es] further" than other vicarious liability principles by creating liability

24

"although [the principal] has himself done everything that could reasonably be required of him . . . and irrespective of whether the agent was acting with or without authority." *Id.* (internal citation omitted) (alteration in original). Where a nondelegable duty exists, an employer may be held liable for its employee's tortious acts *outside* the scope of employment; therefore, Montana treats the nondelegable duty doctrine as an exception to respondeat superior. *Maguire*, 835 P.2d 755, 758–59 (Mont. 1992).

Count 2 of the FAC alleges that all Defendants are vicariously liable for Wedemeyer's conduct because "Montana has created a nondelegable duty of care to protect individuals like M.W." through Montana Code Annotated §§ 52-2-801, *et seq.*, which sets forth the licensure and regulation requirements of adolescent programs like Chrysalis School. According to the FAC, as a DPHHS licensee, InnerChange owed a nondelegable duty of care to M.W. (Doc. 19 ¶130.) Defendants are therefore vicariously liable for the actions of Wedemeyer because their conduct violated that nondelegable duty. (*Id.* ¶ 134.)

Defendants argue that the licensing statutes do not create a duty to Plaintiffs. To support this contention, Defendants cite *Smith v. Ripley*, where this Court found that under Montana law, "[r]ape is outside the scope of employment, even if it occurs in the workplace and under conditions conducive to predatory conduct." 446 F. Supp. 3d 683, 687 (D. Mont. 2020). The Court went on to conclude that

25

Montana's child protection statutes gave rise to a duty on the part of the State to exercise reasonable care in protecting children and therefore, "the nondelegable duty exception . . . impute[s] liability to the State" for a state employee's alleged torts, "even though [the torts] occurred outside the scope of employment." *Id.* at 691–92. Based on *Ripley*, Defendants argue that the licensure and regulation statutes cited by Plaintiffs create a governmental obligation, not an obligation on licensees such as Defendants. (Doc. 21 at 21–22.) The Court disagrees.

The stated purpose of the statutory scheme at issue is "to provide for the licensure and regulation of adolescent programs and maintain a high standard of care *and to ensure the health and safety of the adolescents and parents using the programs*." § 52-2-901 (emphasis added). Contrary to Defendants' assertions, the statutory scheme does create obligations on licensees. For example, the statute provides that "[a] licensed program may not . . . sexually abuse, exploit, or harass an enrolled youth." § 52-2-805(3)(d). The statutory scheme, combined with the significant and continuing relationship between Defendants and enrollees, leads this Court to find a nondelegable duty on the alleged facts of this case. *Ripley*, 446 F. Supp. 3d at 692 n.5.

In construing the FAC in a light most favorable to Plaintiffs, the Court finds that the FAC alleges sufficient facts to support a cognizable legal theory of

vicarious liability. Accordingly, Defendants' motion to dismiss Count 2 is

DENIED.

### IV. Negligence and Negligent Hiring, Supervision, Retention, and Training (Counts 1, 3–6)

Defendants argue that Plaintiffs fail to state knowledge of unfitness of

Wedemeyer and thus Counts 1, 3, 4, 5, and 6 should be dismissed. (Doc. 21 at 22.)

The Court begins with negligence. The elements of negligence are "the

existence of a legal duty owed by the tortfeasor to the claimant, breach of that duty,

causation of harm, and resulting damages." *Anderson v. ReconTrust Co., N.A.*, 407

P.3d 692, 699 (Mont. 2017). Plaintiffs allege that Defendants owed duties of care

to M.W. and her family including: "[t]o provide a therapeutic environment for

M.W. consistent with the representations Chrysalis School made on its website;"

"[t]o provide professional services in conformance with the standards of care

expected of like professional services providers;" "[t]o provide a learning and

therapeutic environment free from abuse, harassment, and intimidation;" and "[t]o

report any suspected child abuse to the authorities." (Doc. 19 ¶ 124.)

Plaintiffs allege that Defendants breached these duties by allowing

Wedemeyer, a known sexual abuser, to be alone with M.W. unsupervised,

resulting in damages to Plaintiffs. (*Id.* ¶¶ 125(e), 126.) The Court is satisfied that

these facts, taken as true, support a cognizable theory of negligence.

The Court now turns to Plaintiffs' claims for negligent hiring, supervision, and retention. The Montana Supreme Court has recognized a direct claim against an employer for negligently hiring, supervising, or retaining an unfit employee. *Peschel v. City Of Missoula*, 664 F. Supp. 2d 1149, 1168 (D. Mont. 2009) (citing *Maguire v. State*, 835 P.2d 755, 760 (Mont. 1992)). Generally, this claim "arises when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his [or her] unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Bruner v. Yellowstone County*, 900 P.2d 901, 906 (1995) (Leaphart, J., dissenting) (citations omitted). Thus, to satisfy a claim for negligent hiring, supervision, or retention, at least three conditions must be present: (1) an employee is unfit; (2) an employer who becomes aware or should have become aware of this unfitness; and (3) the employer's failure to take action. If these conditions are met, an employer may be held liable "for injuries to third persons proximately caused by such negligence." *Vollmer v. Bramlette*, 594 F.Supp. 243, 248 (D. Mont. 1984) (citation omitted).

The Court finds that Plaintiffs have alleged facts that, taken as true, are sufficient to satisfy the above elements. First, the FAC alleges that Wedemeyer was unfit to work with minor female students. According to the FAC, the earliest known occurrence of Wedemeyer's sexual abuse at Chrysalis School was Fall of

28

2021. (Doc. 19 ¶ 145.) The FAC alleges that Wedemeyer masturbated over young

girls' beds while he thought they were sleeping. (*Id.* ¶ 76.) The FAC further alleges

that Wedemeyer fondled a young girl in the shower. (*Id.* ¶ 77.)

Plaintiffs also allege sufficient facts to establish that Defendants knew or

should have known of Wedemeyer's unfitness. The FAC alleges that "[i]n the Fall

of 2021, at least one student . . . reported her concerns about Wedemeyer's

inappropriate sexual 'grooming' behavior" and "her concerns Wedemeyer posed a

risk to the female students at the school" to InnerChange staff. (*Id.* ¶ 79.) The FAC

further alleges that Hickman admitted that InnerChange staff was aware of

allegations of sexual abuse as early as Fall of 2021. (*Id.* ¶ 96.)

Plaintiffs allege sufficient facts to support the theory that InnerChange staff

failed to take action after learning of Wedemeyer's unfitness. For example, the

FAC states that InnerChange "[d]id not terminate the employment of Wedemeyer

at Chrysalis School in late 2021 after learning of his abusive conduct, including his

attempts to initiate a sexual relationship with one or more students." (*Id.* ¶ 91.)

Turning to Plaintiffs' claim of negligent training, the Court finds that the

FAC alleges sufficient facts to support a plausible claim for relief. Defendant

argues that Plaintiffs' claim must fail because the FAC does "not state that

Chrysalis failed to train *Wedemeyer* in particular." (Doc. 21 at 24.) But the FAC

does allege that the staff and administrators that received reports of Wedemeyer's

conduct lacked the training to appropriately handle the reports. (Doc. 19 at 159.)
The Court disagrees with Defendants' position that Wedemeyer's training—or
potential lack of training—is the only training that is relevant to this claim.

Having construed the FAC in a light most favorable to Plaintiffs, the Court
finds more than adequate facts to allow the first, third, fourth, fifth, and sixth
claims for relief to go forward. Accordingly, the motion to dismiss Counts 1, 3, 4,
5, and 6 is DENIED.

## V.  Emotional Distress (Counts 8–9)

Defendants argue that Plaintiffs claims for emotional distress cannot stand
on their own and should therefore be dismissed. (Doc. 21 at 31.) Specifically,
Defendants argue that Plaintiffs "do not support their claims of intentional conduct
or otherwise set forth circumstances establishing reasonable foreseeability that
rests on an unexplained assertion of grooming experienced by a non-party." (*Id.*)

In response, Plaintiffs contend that "in essence, Defendants argue that it is
not reasonably foreseeable that a minor who is subjected to severe sexual assault
will suffer emotional distress," and "common sense and binding law dictate
otherwise." (Doc. 24 at 33.) The Court agrees with Plaintiffs.

Under Montana law, "an independent cause of action for negligent infliction
of emotional distress will arise under circumstances where serious or
severe emotional distress to the plaintiff was the reasonably foreseeable

30

consequence of the defendant's intentional act or omission." *Sacco v. High Country Indep. Press, Inc.,* 896 P.2d 411, 426 (Mont. 1995). Similarly, the test for intentional infliction of emotional distress is whether "serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission." *Id.* at 428. "Intentional infliction of emotional distress is recognized and *can* be pled as a separate cause of action in the courts of Montana." *Id.* at 427.

Here, Plaintiffs allege that that Defendants were aware of Wedemeyer's conduct as early as Fall 2021. (Doc. 19 ¶¶ 46, 79, 96, 159.) Plaintiffs further allege that despite receiving reports of abuse taking place at Chrysalis School, Defendants did nothing. (*Id.* ¶ 82–83.) The question, then, is whether M.W.'s emotional distress was reasonably foreseeable as a consequence of Defendants' intentional omission. This is a question of fact for the jury. *Hurley v. N. Pac. Ry.*, 455 P.2d 321, 323 (Mont. 1969).

Defendants' motion to dismiss Counts 8 and 9 is DENIED.

### VI.    Defendants' Request to Narrow the Parties to the Claims

Finally, Defendants argue that the Court narrow the parties to the claims. The Court declines the request at this time. The parties will be permitted to conduct discovery and file motions for summary judgment if appropriate.

31

CONCLUSION

The Court finds that Plaintiffs failed to allege sufficient facts to support a cognizable legal theory under the MCPA. Similarly, the Court finds that the FAC does not contain sufficient facts to support a claim of breach of fiduciary duty. As such, these claims will be dismissed. The remaining claims are facially plausible and will therefore be permitted to go forward.

Accordingly, IT IS ORDERED that the Motion (Doc. 20) is GRANTED IN PART and DENIED IN PART. Counts 10 and 12 of the FAC are DISMISSED. The Court will set a preliminary pretrial conference by separate order.

DATED this 22nd day of October, 2024.

Dana L. Christensen, District Judge
United States District Court