Nathan A Huey (MT Bar # 27181867)
Lillian Alves (MT Bar # 14077)
Natalie A. Hammond (MT Bar # 65121792)
GORDON REES SCULLY MANSUKHANI, LLP
283 West Front Street, Suite 003
Missoula, MT 59802
Telephone: (406) 218-4074
nhuey@grsm.com; lalves@grsm.com; nhammond@grsm.com
tjordan@grsm.com

*Attorneys for Defendants*

# FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| OLIVER WHITCOMB and AMY CLIFFORD, on behalf of M.W. (Minor), | **Cause No: 9:23-CV-00039-DLC** |
| Plaintiffs, | |
| v. | |
| INNERCHANGE CHANGE ACADEMY, LLC d/b/a CHANGE ACADEMY THERAPEUTIC BOARDING SCHOOL; CHANGE ACADEMY AT LAKE OF THE OZARKS, LLC and CHANGE ACADEMY HOLDINGS, LLC d/b/a EMBARK BEHAVIORAL HEALTH; INNERCHANGE VIVE, LLC; COREY CHANGE ACADEMY, an individual; and AMBERLI WYATT, an individual, | **DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendants. | |

COME NOW Defendants Innerchange Chrysalis, LLC d/b/a Chrysalis Therapeutic Boarding School, Change Academy at Lake of the Ozarks, LLC and Solacium Holdings, LLC d/b/a Embark Behavioral Health, Innerchange Vive, LLC, Corey Hickman and Amberli Wyatt (collectively "Defendants"), pursuant to F.R.Civ.P. 56 and L.R. 56.1(a), and hereby respectfully submits the following Statement of Undisputed Facts in Support of Motion for Summary Judgment, filed Contemporaneously herewith.

1.      Chrysalis Therapeutic Boarding School ("Chrysalis") is a private alternative adolescent residential or outdoor program that is licensed to operate in the State of Montana by the Montana Department of Health and Human Services ("DPHHS"). [Doc. 36, Statement of Stipulated Facts ¶ 11.]

2.      Plaintiffs Oliver Whitcomb and Amy Clifford are the parents and guardians of M.W., who was a minor at the time suit was filed. [Doc. 42, Second Amended Complaint "SAC", ¶ 1]

3.      M.W. was a resident of Chrysalis Therapeutic Boarding School for Girls ("Chrysalis") from January 2022 to April 22, 2022, when she was fourteen years old. [Doc. 42, SAC, ¶¶ 43, 106 and Doc. 36, Statement of Stipulated Facts ¶¶ 26, 32].

4.      Solacium Holdings, LLC and Change Academy at the Lake of the Ozarks, LLC ("CALO") d/b/a Embark Behavioral Health ("Embark");

InnerChange Vive, LLC ("Vive"). See Corp. Defendants' Resps. to Pltfs' 2nd Disc. Reqs., May 19, 2025, attached as Exhibit A.

5.    Embark is a holding company for Chrysalis. [Dep. Corey Hickman, July 31, 2025, at 14:11, 23:9-10, attached as Exhibit B].

6.    Innerchange was a holding company formed between 2005-2006 purchased by Change Academy Lake of the Ozarks ("CALO") in 2018. [Ex. B at 28:13-20].

7.    Following the purchase by CALO, Innerchange was rebranded as Embark. [Ex. B at 28:24 - 29:2; 60:3-8].

8.    Innerchange was acquired by Embark Behavioral Health. [Dep. Heather Jepsen, Aug. 22, 2025, 23:9-11, attached as Exhibit C].

9.    Employees effectively worked for Chrysalis, which was a known part of Embark. [Ex. B at 60:15-16].

10.    Chrysalis maintained its licensure with the Montana Department of Public Health and Human Services. [Ex. B at 50:14-22].

11.    Chrysalis reported all disclosures to DPHHS and licensing official Brian Greer responded and asked follow-up questions indicating the report was received. [Ex. B at 233:21-234:25].

12.    Plaintiffs subpoenaed and received all Chrysalis complaints from 2015 through the date of the subpoena and inquired of Executive Hickman during

his deposition regarding the contents of the production. [Ex. B at 305:20-310:11 and Dep. Ex. 179 p. 1, attached as Exhibit D].

13.    DPHHS made a referral regarding sexual abuse to the Lincoln County Attorney on April 18, 2022. [Doc. 61-2 at 25].

14.    DPHHS interviewed Chrysalis staff and obtained information about what they knew about Tyler Wedemeyer prior to the April 2022 student report and what they did with this knowledge. [Doc. 61-2 at 19, 23 and 61-3 at 5, 19].

15.    DPHHS sent information for the referral of alleged sexual abuse to the Lincoln County Attorney on July 12, 2022. [Doc. 61-3 at 5].

16.    DPHHS closed its referral to the Lincoln County Attorney on September 30, 2022. [Doc. 61-2 at 2].

17.    DPHHS sent an "informational report only" regarding an alleged sexual abuse report it received on August 21, 2023 to the Lincoln County Attorney on October 25, 2023. [Doc. 61-3 p. 58].

18.    There is no evidence in the information provided by DPHHS that Chrysalis has ever had its license denied, suspended, canceled, reduced, modified, or revoked. Exhibit D; Doc. 61-1 to Doc. 61-5. See Administrative Rules of Montana 37.99.110.

19.    In approximately, November of 2021, Oliver Whitcomb and Amy Clifford contacted an educational consultant, Thrive, to assist in finding a

residential care option for M.W. [Dep. Oliver Whitcomb, May 28, 2025 at 55:25 – 56:6, attached as Exhibit E].

20.     Plaintiffs Oliver Whitcomb and Amy Clifford relied on the advice given by Wingate Wilderness Therapy to investigate another residential care option for M.W. following her discharge from Wingate. They followed this advice as it was the "status quo" and what was encouraged. Additionally, they relied on the advice of personal family friend who has experience in drug and alcohol abuse and trauma. [Ex. E at 54:7 – 55:12].

21.     Oliver Whitcomb and Ms. Clifford held dozens of telephone conversations between November of 2021 and January of 2022, with Thrive employees and provided Thrive with a family history. [Ex. E at 118:4 – 18].

22.     Oliver Whitcomb and Amy Clifford first heard of Chrysalis when Thrive presented them to Plaintiffs, along with other schools, on a list of potential residential care options for M.W. [Ex. E at 56:15 – 19 and Dep. Amy Clifford, May, 29, 2025, at 57:18 -58:11, attached as Exhibit F].

23.     M.W.'s parents obtained information about Chrysalis from Thrive employees and from on-line information from Chrysalis' websites. [Ex. E at 58:1-59:23, and Ex. F at 58:12-59:18].

24.     M.W.'s parents chose Chrysalis based mainly on location close to their home in Hailey, Idaho. [Ex. E at 57:2 - 13, and Ex. F at 57:18-58:11].

25.     Oliver Whitcomb's decision to send M.W. to Chrysalis was based on education, food, exercise, strong academics and nice campus. [Ex. E at 57:14-25].

26.     Ms. Clifford also considered what she observed as a nurturing environment and that M.W. would be able to ski and "get out" on the weekends, when making her decision to send M.W. to Chrysalis. She also liked that Thrive described Chrysalis as a smaller program with a non-clinical environment. [Ex. F at 58:3 – 11; 61:1 – 4].

27.     Clifford testified that her impression from the website that Chrysalis was "almost like a spa..." [Ex. F at 58:15 – 24].

28.     Mr. Whitcomb does not recall reviewing any specific online information outside of Chrysalis' website prior to M.W.'s admittance. [Ex. E at 59:19 – 23].

29.     Prior to enrolling M.W. to Chrysalis, Oliver Whitcomb spoke with Embark representative, Michael Carpenter. During this conversation, Mr. Whitcomb and Mr. Capenter discussed administrative matters such as financials surrounding M.W.'s enrollment at Chrysalis and was "all business." [Ex. E at 188:22 – 189:14].

30.     Amy Clifford only spoke to Mr. Carpenter following M.W.'s discharge from Chrysalis. [Ex. F at 141:7 - 23].

31.     Ms. Clifford spoke with Heather Hatch, a Chrysalis employee in mid-January 2022. This conversation was limited to admissions process, tuition, living situation and the logistics of enrolling M.W. at Chrysalis. [Ex. F at 60:1 -17].

32.     Ms. Hatch described M.W.'s living situation at Chrysalis. [Ex. F at 60:18 – 61:7].

33.     Ms. Clifford did not directly speak with Ms. Hatch again prior to M.W.'s enrollment at Chrysalis. [Ex. F at 61 :8 – 13].

34.     Ms. Clifford did not speak with anyone else that worked for Chrysalis or Embark prior to M.W.'s admittance to Chrysalis. [Ex. F at 61:17 – 19]

35.     Oliver Whitcomb spoke with Heather Hatch via telephone while traveling to admit M.W. to Chrysalis. These conversations consisted of discussions regarding enrollment forms and tuition. [Ex. E at 189:15 – 190:10 and Ex F at 61:8 – 13].

36.     Oliver Whitcomb did not speak to a Chrysalis therapist until the day M.W. arrived and was enrolled at Chrysalis. [Ex. E at 62:19 – 63:1].

37.     M.W.'s parents did not visit Chrysalis before enrolling M.W. [Ex. E at 60:14-16, 63:2 - 7, and Ex. F at 61:20-22].

38.     Plaintiffs offer Meg Appelgate as their sole expert on alleged "institutional abuse," "institutional betrayal," "epistemic injustice," and purported

industry- practices within what she terms the "Troubled Teen Industry" (TTI). M. Appelgate Sept. 15, 2025, Expert Report, Exhibit H].

39.    Ms. Appelgate expressly states in her report: "This evaluation does not provide medical, clinical, or therapeutic opinions on standards of care." [Ex. H, pg.5, ¶ 2.3].

40.    Defendants filed a Motion *in limine* to exclude Meg Appelgate. [Doc. Nos. 67-68].

Dated: November 14, 2025.

GORDON REES SCULLY MANSUKHANI, LLP
*Natalie A. Hammond*
Nathan A Huey (MT Bar # 27181867)
Lillian Alves (MT Bar # 14077)
Natalie A. Hammond (MT Bar # 65121792)

*Attorneys for Defendants*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 14, 2025, a true and correct copy of the foregoing was filed and served with the Clerk of the United States District Court using the CM/ECF system which will send notification of such to all attorneys of record.

*/s/ Natalie A. Hammond*
For Gordon Rees Scully Mansukhani, LLP